```
               UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

HELEN DE LA TORRE,                :
                                  :CIVIL ACTION NO. 3:17-CV-2023
          Plaintiff,              :
                                  :(JUDGE CONABOY)
     v.                           :
                                  :
NANCY A. BERRYHILL,               :
Acting Commissioner of            :
Social Security,                  :
                                  :
          Defendant.              :
                                  :

_____

## MEMORANDUM

Pending before the Court is Plaintiff's appeal from the Acting Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). (Doc. 1.) Plaintiff filed an application on October 21, 2014, alleging disability beginning on August 6, 2014.[1] (R. 9.) After Plaintiff appealed the initial February 3, 2015, denial of the claim, a hearing was held by Administrative Law Judge ("ALJ") Richard Zack on April 18, 2016. (*Id.*) ALJ Zack issued his Decision on July 12, 2016, concluding that Plaintiff had not been under a disability, as defined in the Social Security Act ("Act"), through the date last insured of June 30, 2016. (R. 21-22.) Plaintiff requested review of the ALJ's decision which the Appeals Council denied on September

---

[1] Plaintiff's previous application for benefits was denied on August 5, 2014, with the Decision of Administrative Law Judge Timothy Wing. (R. 49-66.) Rather than appeal that decision, Plaintiff filed a new application for benefits alleging that her onset date was one day after the denial. (R. 111-12.)

20, 2017. (R. 1-5.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on November 3, 2017. (Doc. 1.) She asserts in her supporting brief that the Acting Commissioner's determination should be reversed or remanded for the following reasons: 1) the ALJ failed to set reasonable limitations on Plaintiff's ability to work based on her diagnosis of Meniere's disease; and 2) the ALJ erred by giving great weight to the opinion of Melissa Diorio, Psy.D., a State agency consultant. (Doc. 13 at 4.) For the reasons discussed below, the Court concludes Plaintiff's appeal is properly denied.

## **I. Background**

Plaintiff was born on May 11, 1965, and was fifty-one years old on the alleged onset date. (R. 20.) She has a high school education and a two-year associates degree. (R. 29.) Plaintiff alleged that her inability to work was limited by vertigo, dizziness, tinnitus, back pain, and mental health issues. (R. 15.)

In her supporting brief (Doc. 13), Plaintiff does not provide a factual background with citation to evidence of record. In the Argument section of her brief, Plaintiff references four exhibits generally (*id.* at 5 (citing Exs. C7F, C8F, C9F, C10F)) and does not otherwise cite the record (*id.* at 5-12). Lacking the general presentation of facts by Plaintiff, the Court will briefly set out evidence of record pertinent to Plaintiff's claimed errors in order

2

to provide a framework for discussion.

## A. *Meniere's Disease*

As noted by the ALJ, the medical record regarding Plaintiff's Meniere's disease is very limited. (R. 16.) On August 5, 2014, she was seen at the Bucktail Medical Center Emergency Department with the chief complaint of dizziness for several weeks which had worsened a few days earlier. (R. 226.) Plaintiff reported that she had previous similar episodes which were treated with Meclizine. (*Id.*) She was diagnosed with vertigo which was treated with Antivert, and she was told to follow up with her family physician. (R. 224.)

On August 22, 2014, Joel DHue, M.D., an ear, nose and throat specialist at Susquehanna Health, saw Plaintiff to check her for Meniere's disease. (R. 212.) Plaintiff reported that she had episodes of sudden loss of hearing which had begun several months earlier with the most recent event five days before her office visit. (R. 212.) She said the events, which lasted about ten minutes, occurred about twice a week and she had associated ringing and dizziness. (*Id.*) Dr. DHue diagnosed Meniere's disease and planned to get auditory testing. (R. 214.)

On September 26, 2014, Dr. DHue noted that Plaintiff had no more episodes of sudden hearing loss and no pain, she had "pressure headaches" in the temporal region, no otorrhea, no dizziness, her audiogram and tympanogram were normal, and Plaintiff reported that

3

the ringing in her ears continued. (R. 207.) Physical examination was normal. (R. 208.) Dr. DHue assessed Meniere's disease and directed Plaintiff to call the office for an immediate appointment if she had another episode of sudden hearing loss. (R. 209.) He also noted that Plaintiff was to continue with Meclizine when vertigo occurred. (R. 209.)

### *B. Mental Impairments*

On December 12, 2014, Counselor Ashley Kalbach, MSW, LSW, of Crossroads Counseling, Inc., communicated to a Disability Claims Adjudicator that Plaintiff had participated in Counseling and Medication Management with Crossroads since January 17, 2013. (R. 262.) Ms. Kalbach noted that Plaintiff was working toward completing her goals and was cooperative with clinical recommendations. (*Id.*) Ms. Kalbach opined that Plaintiff's prognosis was guarded considering Plaintiff's continued participation in treatment. (*Id.*)

On January 20, 2015, Andrew Cole, Psy.D., conducted a consultative Psychiatric Evaluation. (R. 265-68.) He noted that Plaintiff lived with her eleven-year-old daughter and her four-year-old granddaughter, and she last worked as a cook in 2011, a job she held for one-and-a-half weeks before being let go. (R. 265.) Dr. Cole's report of Plaintiff's "Current Functioning" included the following:

> The claimant reported difficulty falling asleep. Her appetite is normal. She

4

> reported that she experiences agitation and
> anger when her mood becomes low.  She denied
> most other symptoms of depression.  She
> denied thoughts, plans, or intent for suicide
> or homicide.  The claimant stated that she
> worries excessively, has difficulty
> concentrating, and experiences nightmares . .
> . related to a history of abuse as an adult
> and child; however, she did not report other
> symptoms of post traumatic stress disorder. .
> . . The claimant reported difficulties with
> short-term memory and concentration.  She
> recently started to experience difficulty
> with spelling.

(R. 265-66.)  "Legal History" indicates that Plaintiff was arrested for assault in September 2013 and she received two-and-a-half years probation.  (R. 266.)  Mental Status Examination revealed the following: Plaintiff was cooperative and her manner of relating was adequate; speech was fluent and clear, and expressive and receptive language skills were adequate; affect was full in range and appropriate to speech and thought content; mood was dysthymic; orientation was intact to person, place, and time; attention and concentration were intact; Plaintiff completed counting, simple calculations, and serial 3s tasks; recent and remote memory skills were intact; overall intellectual functioning appeared to be in the average to below average range with the general fund of information appropriate to experience; and insight and judgment were fair.  (R. 266-67.)  Related to "Mode of Living," Dr. Cole noted that Plaintiff was able to dress, bathe, and groom herself, she cooked, cleaned, did laundry, shopped, managed money, and drove.  (R. 267.) Plaintiff reported that she spent her days cleaning, organizing,

5

and cooking. (R. 267.) Dr. Cole found that the results of the examination were consistent with psychiatric problems which did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. (*Id.*) He diagnosed unspecified depressive disorder, unspecified anxiety disorder, general personality disorder, rule out PTSD, and substance use disorder in full remission. (R. 268.) Dr. Cole opined that Plaintiff's diagnosis was fair. (*Id.*)

On January 30, 2015, State agency reviewing consultant Melissa Diorio, Psy.D., completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment. (R. 77-81.) She found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation, each of extended duration. (R. 78.) Dr. Diorio stated "[t]he claimant is capable of working within a work schedule and at a consistent pace. Claimant can make simple decisions. The claimant is able to carry out very short and simple instructions. The claimant would be able to maintain regular attendance and be punctual." (R. 80.) Dr. Diorio futher noted that Plaintiff was capable of asking simple questions and accepting instructions, she was able to maintain socially appropriate behavior, and her activities of daily living and social skills were functional. (R. 80-81.)

6

## C. ALJ Decision

In his July 12, 2016, Decision, ALJ Zack found that Plaintiff had the following severe impairments: degenerative disc disease; impingement syndrome of the right shoulder; Meniere's disease; obesity; depressive disorder; anxiety disorder; and personality disorder. (R. 11.) He concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.*) ALJ Zack determined that Plaintiff had the residual functional capacity ("RFC") to perform light work

> except she needed to avoid climbing ladders and scaffolds; needed to avoid exposure to dangerous heights, unprotected dangerous machinery, excessive vibration, and loud noises. In addition, the claimant would have had difficulty functioning in a job that required constant frequent interaction with the public on a face-to-face basis, as well as working as a team member with coworkers ans supervisors. However, she could have occasional interaction with the public, coworkers and supervisors and could respond appropriately. She was limited to relatively simple, repetitive type work involving understanding, remembering, and carrying out simple instructions and making simple work-related decisions. The claimant had full use of her upper extremities for reaching, handling, fingering, and feeling.

(R. 14.)

Based on this RFC, ALJ Zack concluded that Plaintiff could not perform her past relevant work but she was able to perform other jobs that existed in significant numbers in the national economy.

7

(R. 20.) Therefore, the ALJ found that Plaintiff had not been under a disability from the alleged onset date of August 6, 2014, through June 30, 2016, the date last insured. (R. 21.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. (R. 20.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft*

9

*v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not

10

sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary,

11

in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

### IV. Discussion

As set out above, Plaintiff asserts the Acting Commissioner's determination should be reversed or remanded for the following reasons: 1) the ALJ failed to set reasonable limitations on Plaintiff's ability to work based on her diagnosis of Meniere's disease; and 2) the ALJ's erred by giving great weight to the opinion of Melissa Diorio, Psy.D., a State agency consultant. (Doc. 13 at 4.)

*A. Meniere's Disease*

Plaintiff frames the issue related to Meniere's disease as whether the ALJ erred by failing to set reasonable limitations on Plaintiff's ability to work based on the diagnosis. (Doc. 13 at 4.) Defendant responds that the ALJ appropriately considered Meniere's disease and associated dizziness. (Doc. 15 at 7.) The Court concludes Plaintiff has not satisfied her burden of showing that the claimed error is cause for reversal or remand.

12

Plaintiff's one page "argument" related to this issue does not contain a single citation to the record and is inadequate for several reasons. (Doc. 13 at 5.) First, SSR 82-62 addresses "A Disability Claimant's Capacity to Do Past Relevant Work, In General," SSR 82-62, 1982 WL 31386, at *1, and Plaintiff does not identify the relevance of the provision to this case where the ALJ determined Plaintiff was not able to do her past relevant work. (*See* R. 20.) More importantly, Plaintiff states that ALJ Zack "committed reversible error in failing to develop the record regarding the impact of Claimant's vertigo on her ability to perform light duty employment as required under SSR 82-62," but she does not provide support for the assertion or identify what additional limitations would be "reasonable" (*id.* at 4).

Similarly, Plaintiff references SSR 85-15 in conjunction with her criticism regarding ALJ Zack's "finding that the Claimant can perform light work as it is performed" (Doc. 13 at 5), but she does not associate the provision with the facts of this case. SSR 85-15 "clarifies policies applicable in cases involving the evaluation of solely nonexertional impairments." SSR 85-15, 1985 WL 56857, at *2. Plaintiff sets out language found in the SSR regarding the erosion of the occupational base due to nonexertional limitations, *see* 1985 WL 56857, at *4, but she does not relate the information to this case or show how the SSR information points to error. (Doc. 13 at 5.) Moreover, the meaning of Plaintiff's assertion

that ALJ Zack found that Plaintiff could "perform light work as it is performed," (Doc. 13 at 5) is not clear and, if construed to mean ALJ Zack found Plaintiff capable of a full range of light work, it is inaccurate: ALJ Zack found Plaintiff could perform light work with many of limitations related to Meniere's disease (*see* R. 16). Specifically, ALJ Zack noted that Plaintiff's Meniere's disease "imposed a light work level, with restrictions for exposure to climbing ladders and scaffolds, dangerous heights, unprotected dangerous machinery, excessive vibration, and loud noises." (R. 16.) Plaintiff's conclusory "argument" does not show the ALJ erred in this determination. Therefore, remand or reversal is not required based on the ALJ's consideration of limitations related ot Meniere's disease.

**B.  *State Agency Consultant Opinion***

Plaintiff contends the ALJ erred in giving great weight to Dr. Diorio's opinion because Dr. Diorio, a State agency reviewing consultant, did not have the benefit of seeing all the records. (Doc. 13 at 4, 6.) Defendant responds that the ALJ's assessment of medical opinions is supported by substantial evidence. (Doc. 15 at 8.) The Court concludes Plaintiff has not satisfied her burden of showing the claimed error is cause for reversal or remand.

The Third Circuit Court of Appeals has made clear that "State agent opinions merit significant consideration." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing SSR

96-6p ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s). . . ." (alterations in *Chandler*)). *Chandler* explained that

> because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding[] . . . is an update to the report required." SSR 96-6p (July 2, 1996).

667 F.3d at 361. A substantial change in a claimant's medical condition following a consultative opinion has been addressed from a different perspective where courts have considered evidence of a deteriorating condition to be a relevant factor in reviewing the weight accorded an opinion which predates such evidence. *See, e.g.*, *Grimes v. Colvin*, Civ. A. No. 15-113E, 2016 WL 246963, at *2 (W.D. Pa. Jan. 21, 2016). *Grimes* noted that the date of a non-examining state agency opinion (up to a few years old), in and of itself, is not an issue. *Id.* (citing *Chandler*, 667 F.3d at 361). However, where evidence can be read to indicate that a plaintiff's condition deteriorated after the state agency reviewer issued his opinion, *Grimes* considered the ALJ's reliance on that opinion "troubling." *Id.*

15

While Plaintiff cites four exhibits and states that ALJ Zack did not review forty-four pages of relevant documents (Doc. 13 at 6 (citing Exs. C7F, C8F, C9F, C10F)), she does not identify specific documents or their relevancy. Importantly, Plaintiff does not show why or how the evidence may have changed Dr. Diorio's opinion or that the records indicate a deteriorating condition. Thus, Plaintiff has not taken the first steps toward demonstrating error on the basis alleged. Plaintiff's reference to the consideration of a treating source opinion over that of a non-treating, non-examining source and her citation to authority supporting the proposition that the former should not be assigned less than controlling weight on the basis of the latter (Doc. 13 at 6-9 (citations omitted)) is unavailing in that she points to no opinion of a treating source which should be considered controlling in this case. ALJ Zack explained the basis for his assignment of great weight to Dr. Diorio's opinion and Plaintiff has presented no basis to conclude his assessment is not based on substantial evidence. Therefore, Plaintiff has not satisfied her burden of showing the claimed error is cause for reversal or remand.

## V. Conclusion

For the reasons discussed above, the Court concludes Plaintiff's appeal is properly denied. An appropriate Order is filed simultaneously with this Memorandum.

                                        S/Richard P. Conaboy
                                        RICHARD P. CONABOY
                                        United States District Judge

DATED: July 12, 2018